UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM MIDGETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) Civil Action No.: 05-10129-RGS | |
| UNITED STATES DEPARTMENT OF ) | |
| TRANSPORTATION, and ) | |
| TRANSPORTATION SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

### INTRODUCTION

The Defendants, United States Department of Transportation ("DOT") and the

Transportation Security Administration ("TSA"),[1] submit this memorandum in support of their

Motion to Dismiss for failure to state a claim upon which relief may be granted.   As explained

in more detail below, the allegations of the complaint, taken as true, do not state any claims of

discrimination based on age against the plaintiff.  Therefore, this suit must be dismissed against

the DOT and TSA.

### BACKGROUND

This case arises out of the plaintiff's failure to pass a standardized computer test ("the

test") as a part of his application to become a transportation security screener with the TSA.  The

---

[1] The plaintiff sues the Security Screener's Administration which does not exist. However, the defendants will assume the plaintiff seeks to sue the TSA.

allegations of the complaint, construed in the light most favorable to the plaintiff, are as follows.

The plaintiff, William Midgette, Jr., is a 71 year old male.  Complaint at 8.  In or about July 2002, the plaintiff took a standardized computer test necessary to qualify as a security screener for the TSA.[2]  Complaint at 1, 5, 8, and 9.  NCS Pearson Inc. ("the proctors") conducted the employment test on behalf of the TSA at a Hilton Hotel ("the hotel") in Boston, Massachusetts near Logan International Airport ("the testing site").  Complaint at 9.  On July 18, 2002, the plaintiff alleges that he reported to the testing site but was told to return the following day.[3]  Complaint at 1.  The plaintiff returned the next day and noticed that applicants were being given the test in either a conference room on the second floor of the hotel, or in a tent located behind the premises.  Complaint at 9.  The plaintiff was assigned by the proctors to take the test in a large tent behind the hotel.[4]  *Id.*

All applicants took a standardized computerized test.  Complaint at 1.  The plaintiff alleges that the test was made exceptionally difficult to take because the tent was unlit, applicants had to sit in "metal back folding chairs," and the text font on the test was not consistently the same size and changed repeatedly from small to medium.  Complaint at 2.  Additionally, the plaintiff has stated that because he was required to look at a monitor for

---

[2] The Plaintiff has inconsistently stated the date when he took the test as both July 19 and August 19, 2002.  *Compare* Complaint at 1, *with* Complaint at 8, respectively.

[3] Plaintiff claims he was told by the proctors to return the following day at 11:00 AM, although, the assessment proceedings were scheduled to begin at 9:00 AM.  Complaint at 8.  For some unexplained reason, plaintiff reported to take the test at 7:00 AM the next day.  *Id.*

[4] Additionally, the plaintiff suggests that he believes that the proctors used the tent to "filter out" undesirable applicants.  Complaint at 3.  Later however he seems to suggest otherwise by quoting Mr. Alexander T. Keenan of the TSA who stated that there were no specific reasons why any person was assigned into any testing group.  Complaint at 5.

portions of the test, he had to lean forward to see the screen and this caused his back to "tighten up." Complaint at 2. The plaintiff alleges that this back pain compounded over time as he sat in the chair for over three hours. Complaint at 2. The plaintiff claims that at least one other person that day agreed that the testing conditions were remarkably poor. Complaint at 2. The plaintiff alleges one woman loudly demanded to see someone of authority to complain after she had exited the station where applicants received their results. Complaint at 2. The plaintiff claims that the woman stated, "[I] am a school teacher, and [I] have taken and given test[s] all my life and have never seen anything like this." Complaint at 2. Because the test was entirely scored by computer, the plaintiff "was informed that he had not successfully completed the transportation security screener test"on the same day of taking the test. Complaint at 8.

The plaintiff claims that the testing conditions were so poor that "nobody in the tent passed that test." Complaint at 2 and 3. The plaintiff alleges several times that even "Einstein" could not have passed the test under such poor conditions. Complaint at 2 and 3. Later in his complaint, and despite his allegations that no one could pass the test, the plaintiff seems to suggest that he did, in fact, pass the computerized test stating that he had "no doubt that [he] completed the whole test successfully." Complaint at 8.

## ARGUMENT

I.    **Air Transportation Security Act**

After the events of September 11, 2001, Congress promulgated the Aviation and Transportation Security Act (ATSA) to ensure the effective and thorough screening of all passengers and property aboard aircraft. 49 U.S.C. § 44901 (2005). A newly-created TSA was charged with the duty of deploying trained federal security screeners at all United States airports

and deploying a system capable of screening all checked baggage within roughly a one year period from the date of the ATSA's enactment. *See id.* at (c), (d) & "other provisions"; Aviation and Transportation Security Act of 2001, Pub. L. No. 107-71, §110(c), 115 Stat 616.

According to the ATSA, all security screening personnel employed by the TSA must meet at a minimum a set of proscribed standards and qualifications which include that a security screeners have a high school diploma, have basic aptitudes and physical abilities, and can speak and write English at a specified level. *See* 49 U.S.C. § 44935(f)(1). Among the required basic aptitudes and physical abilities, security screeners must "be able to distinguish on the screening equipment monitor the appropriate imaging standard specified by the Under Secretary." § 44935(f)(1)(B)(i). The computer test described in the complaint is designed to test this specific ability.[5]

---

[5] The TSA developed a screener object recognition test (SORT) to test for an applicants ability to "distinguish on the screening equipment monitor the appropriate imaging standard." SORT is the test the plaintiff took and failed. Applicants who fail SORT are not considered for the screener training program. Applicants take SORT on a computer and are scored by computer. The test requires that an applicant be able to distinguish and interpret X-ray images. The test itself was designed to measure the ability of applicants to identify everyday objects in luggage. The ability to detect dangerous objects is taught and tested during the actual screener training program after an applicant is accepted into the training program. The test is timed, scripted and standardized. *See generally* Transportation Security Administration, *Applicant and Employee Information for Lead Transportation Security Screeners (LTSS), Supervisory Transportation Screeners (STSS) and Transportation Security Screeners (TSS), available at* http://company.monster.com/ustsa/FAQ.htm (last visited June 16, 2005).

II.     **By Plaintiff's Own Admission, All Applicants Were Treated The Same Regardless of Age, Sex and Race**

The gravamen of the plaintiff's allegations is that the proctors assigned him to take the test in the tent and that once inside the tent he was subjected to extremely poor testing conditions which caused him to fail the test. The plaintiff does not allege any facts that suggest he was discriminated against because of his age. In fact, the plaintiff states several times that no one, not even "Einstein," could have passed the test.

On a motion to dismiss for failure to state a claim upon which relief may be granted, 12(b)(6), the court must view the facts and allegations of the complaint in a light most favorable to the plaintiff. *See Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). Furthermore, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that [plaintiff] can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654 (1999) (*quoting*, *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).

A complaint in an employment discrimination suit need not set out the elements of a *prima facie* case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema,* 534 U.S. 506, 511-512 (2002). Nonetheless, a complaint must satisfy the requirement of Fed. R. Civ. P. 8(a), that it include "a short and plain statement of the claim showing that the pleader is entitled to relief." While the requirements of Rule 8(a) are "minimal," they "are nevertheless not 'nonexistent.'" *See Cooperman,* 171 F.3d at 47; *Davidson v. Cao*, 211 F.Supp.2d 264, 280 (D. Mass. 2002). The plaintiff must provide factual allegations, direct or circumstantial in his complaint, "respecting each material element necessary to sustain recovery under some actionable legal theory." *Cooperman*, 171 F.3d at 47; *see Davidson* 211 F.Supp.2d at 280-281.

5

Moreover, "while the plaintiff's 'facts' must be accepted as alleged, this does not automatically extend to '[b]ald assertions, subjective characterizations and legal conclusions.'" *DM Research, Inc. v. College of American Pathologies*, 170 F.3d 53, 55 (1st Cir. 1999) (citation omitted).

Courts properly dismiss a claim of discrimination by disparate treatment pursuant to Fed. R. Civ. P. 12(b)(6) when the facts of the complaint fail to allege any actual discrimination. *See Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979) (affirming lower courts dismissal of Title VII violation because complaint set forth no facts sufficient to support claim of discrimination); *United States v. Storey*, 390 F.3d 760, 765 (3rd Cir. 2004) (affirming lower courts dismissal of complaint alleging discrimination because no facts in complaint supported allegation that he was discriminated against because of race and national origin and thus he did not suffer an adverse employment action recognized by Title VII). Disparate treatment occurs when an employer treats an applicant belonging to a protected class "less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Raytheon Company v. Hernandez,* 540 U.S. 44, 52 (2003) (*citing, Int. Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-336 (1977)).

Here, the facts alleged by the plaintiff fail to state a claim of age discrimination.[6] Essentially, the complaint alleges that the testing conditions were so poor that not even someone as intelligent as "Einstein" could have passed the test. Complaint at 1-3, 5, and 9. The plaintiff states in his complaint that everyone in the tent took the exact same, standardized, computerized test under the same (albeit poor) conditions. Complaint at 1-3, 5, and 9. These facts do not

---

[6] Defendants assume that plaintiff is claiming a violation of the Age Discrimination in Employment Act of 1967. *See* 29 U.S.C. §§ 621-623 (2005).

allege that the plaintiff was treated less favorably than others because of his age.  By the plaintiff's own admissions, he was treated the same as everyone else in the tent.  Absent any facts that the defendants subjected the plaintiff to disparate treatment because of his age, the plaintiff's claim of discrimination cannot survive defendants motion to dismiss.  *See Fisher*, 598 F.2d at 665; *Storey*, 390 F.3d at 765.  The plaintiff's bare allegations of age discrimination is belied by the fact that all applicants took the same test under the same conditions.  Therefore, the court should grant defendant's Motion to Dismiss.

Moreover, although plaintiff suggests that the testing conditions were worse in the tent then inside, he alleges no facts to support a contention that he was placed in the testing area for any reason other than a random sorting of candidates.  Additionally, there are no facts in the complaint that suggest his placement in the tent had anything to do with his age.

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendants respectfully request that the plaintiff's claims against the defendants be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Jeffrey M. Cohen
Jeffrey M. Cohen
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel. No. (617) 748-3100
Facsimile (617) 748-3969

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 24, 2005, I caused a copy of the foregoing Motion to be served on Plaintiff by first class mail, postage pre-paid to Apt. 117, 5 Admiral Way, Chelsea, MA 02150-4004

/s/ Jeffrey M. Cohen
Jeffrey M. Cohen
Assistant U.S. Attorney